JIAN HUI SHAO, Petitioner,

v.

BOARD OF IMMIGRATION APPEALS, Respondent.

Docket No. 04–3965–AG.

United States Court of Appeals, Second Circuit.

Argued: March 9, 2006.

Decided: Oct. 12, 2006.

498

Gary J. Yerman, New York, NY, for Petitioner.

Richard H. Loftin, Assistant United States Attorney (David P. York, United States Attorney, on the brief), United States Attorney's Office for the Southern District of Alabama, Mobile, AL, for Respondent.

Before CALABRESI, CABRANES, and WESLEY, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

We consider here whether a person who fathers or gives birth to two or more children in China, in apparent violation of China's family planning policies, may qualify on that basis alone as "a person who has a well founded fear that he or she will be forced" by the Chinese government "to abort a pregnancy or to undergo involuntary sterilization" and may accordingly qualify as a refugee. *See* 8 U.S.C. § 1101(a)(42) (defining "refugee").[1] We consider whether this question of statutory interpretation should be decided in the first instance by the administrative agency charged with enforcing the relevant portion of the Immigration and Nationality Act of 1952 ("INA").

Petitioner Jian Hui Shao, a native and citizen of China, seeks review of an order of the Board of Immigration Appeals ("BIA") affirming without opinion an order of Immigration Judge ("IJ") William Van Wyke denying his application for asylum, withholding of removal pursuant to the INA, and relief under the Convention Against Torture ("CAT"),[2] and ordering

1. The definition of "refugee" at 8 U.S.C. § 1101(a)(42) provides, in relevant part, that "refugee" means ... any person who is outside any country of such person's nationality ... who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.
   In addition, the definition provides that a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coer-

cive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

2. United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85; *see also* 8 C.F.R. § 1208.16(c) (regulations implementing the CAT).

petitioner removed to China. *See In re Jian Hui Shao*, No. A 79 759 247 (B.I.A. June 28, 2004), *aff'g* No. A 79 759 247 (Immig. Ct. N.Y. City Feb. 27, 2003).

Petitioner argued that he was entitled to asylum on the ground that he had fled China to escape its family planning program and is at risk of being forcibly sterilized if he returns to China because he and his wife have two children. The IJ, largely because he did not find Shao's testimony credible, denied all his applications for relief and ordered him removed to China. The BIA affirmed without opinion as prescribed by 8 C.F.R. § 1003.1(e)(4), *see generally Kambolli v. Gonzales*, 449 F.3d 454, 458–60 (2d Cir.2006) (describing BIA "streamlining" program), and this petition followed.

## INTRODUCTION

In February 2002, Shao entered the United States at Honolulu International Airport carrying phony documents. After being served a Notice to Appear by the Immigration and Naturalization Service ("INS"),[3] he conceded removability as charged and applied for asylum and other relief. In his airport interview, his asylum application, and his testimony before the IJ,[4] Shao stated that as a non-agricultural worker, he was prohibited by Chinese law from having more than one child. After he and his wife had a daughter, his wife had an intrauterine device ("IUD") inserted to prevent another pregnancy. She was required to undergo regular examinations so that the government would know if she became pregnant. About two years after the IUD insertion, Shao's wife paid a private doctor to remove the device. A few months later she became pregnant and, at some time near that of the conception, she missed her government examination.

Shao stated that family planning authorities, desiring to abort his child, detained him and demanded to know his wife's whereabouts. Authorities beat him when he refused to reveal his wife's locations; she had fled to her mother's house and subsequently to a mountainous, rural area. With the aid of a friend who worked for the police, Shao escaped from detention and fled to the home of a relative in a city from where international transport could be arranged. He paid someone to procure forged travel documents, which he used to reach the United States via Japan.

Shao testified that his wife, who has since given birth to their second child, remains in hiding and that Shao's father helps her and the children survive by delivering food and medicine to her remote location. He said that if his wife were caught by police, she would likely be sterilized against her will, as would he if he returned to China. In addition, he said he could face criminal punishment for defying the family planning authorities and for fleeing China.

The IJ identified various inconsistencies in Shao's story and stated that certain elements of the story were implausible. Accordingly, he found that Shao's testimony was not sufficiently persuasive to meet

---

**3.** On March 1, 2003, the INS was reconstituted as the Bureau of Immigration and Customs Enforcement and the Bureau of U.S. Citizenship and Immigration Services, both within the Department of Homeland Security. Because the rulings at issue in this case were made when the agency was still the INS, we refer to it as the INS in this opinion. *See*

*Monter v. Gonzales*, 430 F.3d 546, 548 n. 1 (2d Cir.2005).

**4.** Although Shao's story has not been entirely consistent, the narrative that follows generally accords with his statements since arriving in the United States. We discuss below certain discrepancies among his statements.

his burden of proof for any of his desired forms of relief.[5] Shao appealed to the BIA, which affirmed without opinion.

## DISCUSSION

■ When the BIA affirms an IJ's decision without opinion pursuant to 8 C.F.R. § 1003.1(e)(4), we review the IJ's decision directly as the final agency determination. *See, e.g., Li Hua Lin v. DOJ,* 453 F.3d 99, 105 n. 5 (2d Cir.2006).

On appeal, Shao challenges the decisions of the IJ and the BIA on two grounds. First, he argues that the IJ erred in not crediting his testimony with regard to his alleged past persecution by the family planning authorities in China. Second, he argues that the IJ erred as a matter of law by not concluding that Shao has a credible fear of future persecution on the basis of his having fathered two children in violation of Chinese law. As we explain below, we reject Shao's challenge to the IJ's adverse credibility finding, and we remand the statutory interpretation question so that the BIA may decide in the first instance under what circumstances, if any, having more children than Chinese law allows, standing alone, may serve as a basis for a credible fear of future persecution as defined by 8 U.S.C. § 1101(a)(42).

## I. The IJ's Adverse Credibility Finding Is Supported by Substantial Evidence

■ In review of an order of removal, the "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 (2d Cir.2004) ("[W]e defer to the factual findings of the BIA and the IJ if they are supported by substantial evidence."). Our review of an IJ's credibility finding is especially deferential. *See id.* at 74; *Borovikova v. DOJ,* 435 F.3d 151, 156 (2d Cir.2006).

■ The IJ identified a variety of inconsistencies in Shao's statements. For example, Shao wrote in his asylum application that his wife went into hiding sometime after the removal of her IUD but before she realized that she was pregnant.[6] Before the IJ, however, Shao testified that "she already [knew] that she was pregnant and ... that's why she ... went into hiding." Shao also provided slightly different stories with regard to the hiding place of his wife. He testified that she is living alone in a "rural area" and that he did not "really know what exactly area that is" because he has never been there. In his airport interview, however, he stated that she was "hiding at the house of a friend." In addition, the IJ described Shao's demeanor as "unresponsive" during certain lines of questioning, finding that Shao's evasiveness indicated a desire not to be "pinned down about a particular answer." Certain aspects of Shao's story struck the IJ as being simply implausible. In particular, the IJ found the circumstances of Shao's alleged escape from custody difficult to believe.

Although we do not agree with every factual determination of the IJ and would not necessarily have reached the same

---

**5.** The IJ's finding included two logical steps. First, he found, on the basis of his adverse credibility finding, that Shao had not demonstrated past persecution. Second, he held that even if Shao does have two children in China, that fact is not enough, without more, to establish that Shao would likely be persecuted in the future.

**6.** In the affidavit included with the application, Shao wrote that his wife missed her medical examination and "instead of this, she went to her parents' home and hid there." The affidavit continues, "Soon later, my wife discovered that she got pregnant."

finding about Shao's credibility, we cannot conclude that the IJ's determination is not supported by substantial evidence or that "any reasonable adjudicator would be compelled to conclude," 8 U.S.C. § 1252(b)(4)(B), that Shao testified truthfully and actually suffered past persecution in China. Accordingly, we decline to set aside the IJ's finding that Shao did not establish past persecution.

## II. The BIA Should Decide in the First Instance Whether Having Two Children May, Without More, Provide a Well–Founded Fear of Future Persecution

▉ Shao's second challenge presents a question of law, which we review *de novo*. At issue is whether one who fathers two children in violation of China's family planning policy, as Shao asserts he has done,[7] may—on that basis alone, without any need for particularized evidence of past persecution or threats of future harm— qualify as a "refugee" as defined by the INA because he is "a person who has a well founded fear that he or she will be forced" by the Chinese government "to abort a pregnancy or to undergo involuntary sterilization." *See* 8 U.S.C. § 1101(a)(42) (defining "refugee").

▉ "A well-founded fear [of persecution] has 'both a subjective and an objective component.'" *Jian Xing Huang v. INS*, 421 F.3d 125, 128 (2d Cir.2005) (quoting *Gomez v. INS*, 947 F.2d 660, 663 (2d Cir.1991)). To demonstrate a well-founded fear, an alien must show that (1) "he subjectively fears persecution" and (2) "his fear is objectively reasonable." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir.2004). Determining whether an alien has the requisite subjective fear is neces-

sarily a fact-intensive inquiry, and we give such agency findings great deference. When the facts supporting an alien's asylum claim are not disputed, however, whether he can possess the necessary objective fear is a question of law.

Reviewing an application in which an alien presented facts similar to Shao's, we expressed skepticism as to whether an alien could demonstrate the necessary objective reasonableness absent specific facts—beyond the general conditions in China—giving rise to his subjective fear. *See Jian Xing Huang*, 421 F.3d at 129 ("In the absence of solid support in the record for Huang's assertion that he will be subjected to forced sterilization, his fear is speculative at best."). Unlike *Jian Xing Huang*, in which the petitioner's two children were born in the United States, *id.* at 127, Shao's children were born in and live in China. To decide the case before us, we need not, and do not, revisit whether the birth of children in the United States could give a Chinese national a well-founded fear of persecution upon return to China.

The question before us—under what circumstances, if any, having two children in China is sufficient grounds for a well-founded fear of future persecution—is not clearly answered by the statutory definition of "refugee," *see* 8 U.S.C. § 1101(a)(42); note 1 *ante*. Neither BIA decisions nor our own cases provide an authoritative answer.

For several reasons, we conclude that the BIA is better situated than we are to decide the statutory interpretation question in the first instance. *See Yuanliang Liu v. DOJ*, 455 F.3d 106, 116–17 (2d Cir.2006) (listing reasons to remand a question of law to the BIA); *cf. Mirzoyan*

---

**7.** It is not disputed on appeal that Shao and his wife have two children, both of whom

were born in China and remain there.

*v. Gonzales,* 457 F.3d 217, 223 (2d Cir. 2006) (remanding a case to the BIA so it could announce its preferred definition of "economic persecution").

■ First, as the agency charged with enforcement of the INA, the BIA is entitled to deference when it interprets the statute, *see Shi Liang Lin v. DOJ,* 416 F.3d 184, 189–91 (2d Cir.2005); *see generally Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), something it does on a regular basis, *see, e.g., In re C–Y–Z–,* 21 I. & N. Dec. 915, 917–19 (B.I.A. 1997) (holding that an alien could establish past persecution, and thereby qualify as a "refugee" under 8 U.S.C. § 1101(a)(42), based on his wife's sterilization). Accordingly, any effort expended by us interpreting the statute would be for nought should the BIA subsequently reach a different, yet reasonable, interpretation of this ambiguous provision.

Second, Shao's circumstances are shared by innumerable potential asylum applicants, and claims similar to his have been advanced by many petitioners before this and other courts. Whether the United States should grant asylum to Chinese nationals with more children than is allowed by that country's family planning policies raises complicated public policy and foreign policy questions, significantly affecting our foreign relations. We believe, in light of these concerns, that it would be unsound for each of the several Courts of Appeals to elaborate a potentially nonuniform body of law; only a precedential decision by the BIA—or the Supreme Court of

the United States—can ensure the uniformity that seems to us especially desirable in cases such as these. *Cf. Eur. Cmty. v. RJR Nabisco, Inc.,* 424 F.3d 175, 182 (2d Cir.2005) (noting that "issues and disputes of foreign relations policy" are "assigned to—and better handled by—the political branches of government) (internal quotations marks omitted); *INS v. Aguirre–Aguirre,* 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (noting that "judicial deference to the Executive Branch is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations.").

Third, the BIA possesses far more relevant expertise than we do. It is fully devoted to immigration cases and is consequently better able to predict the likely effects of the resolution of this question of law. Its regular interaction with aliens seeking asylum in the United States, particularly those claiming persecution at the hands of China's family planning authorities,[8] provides a more substantial background for these decisions than does even our heavy immigration caseload. In particular, the BIA is better prepared explicitly to evaluate whether different regions of China enforce divergent family planning policies and whether applicants from diverse locales should accordingly receive different treatment in asylum proceedings.[9] We urge it to do so.

Our decision to remand this question of law to the BIA for resolution in the first instance is supported by recent decisions of the Supreme Court of the United States

---

**8.** The BIA should, for example, be better equipped than we to consider the value *vel non* of the "oft-cited Aird affidavit," *see Wei Guang Wang v. BIA,* 437 F.3d 270, 275 (2d Cir.2006), which has been introduced in hundreds of asylum cases and discusses China's family planning regime.

**9.** If the BIA decides that having more children than is allowed by China's family planning policy may, standing alone, qualify an alien for asylum under the INA in some cases, it would be useful for the BIA to explain to what extent the actual practice of Chinese officials would be relevant to the disposition of individual applications.

and our Court. *See, e.g., Gonzales v. Thomas,* —— U.S. ——, ——, 126 S.Ct. 1613, 1615, 164 L.Ed.2d 358 (2006) (vacating judgment by Court of Appeals that did not allow BIA to determine in the first instance whether an applicant's family "presents the kind of 'kinship ties' that constitute a 'particular social group' "); *Yuanliang,* 455 F.3d at 118 (seeking BIA definition of "frivolous"); *Mirzoyan,* 457 F.3d at 223 (seeking BIA definition of "economic persecution"); *Shi Liang Lin,* 416 F.3d at 192 (remanding so the BIA could "clarify whether, when, and why boyfriends and fiancés [of those persecuted by family planning authorities] may or may not similarly qualify as refugees" under the INA in light of *In re C–Y–Z–); Ucelo–Gomez v. Gonzales,* 448 F.3d 180, 187–88 (2d Cir.2006) (remanding so BIA could determine whether certain aliens were members of a "particular social group").

For the foregoing reasons, we decline to settle the statutory interpretation question and instead remand the cause to the BIA for resolution of that question in the first instance.

### CONCLUSION

In sum, we (1) deny Shao's petition for review insofar as he challenges the IJ's credibility determination, and (2) remand the cause to the BIA to determine in the first instance in what circumstances, if any, a Chinese national who has two children in China in apparent violation of that country's family planning policies may, on that basis alone, establish the "well-founded fear of persecution" needed to support an asylum claim. Because of the volume of similar claims being raised in this Court, we respectfully request that the BIA resolve this matter as soon as possible.