**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 9, 2006
Decided December 7, 2006

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 06-1542

| | |
|---|---|
| YLLNIS DISHA,<br>  *Petitioner,* | On Petition for Review of an Order of<br>the Board of Immigration Appeals |
| *v.* | No. A98-152-064 |
| ALBERTO R. GONZALES,<br>  *Respondent.* | |

**O R D E R**

Yllnis Disha petitions for review of a Board of Immigration Appeals' order affirming the Immigration Judge's denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture. Disha alleged that he fears future persecution in his native Albania because of his membership in a social group he characterizes as "mental patients who cannot receive proper treatment in Albania." The IJ denied the application for asylum because he found it untimely. The IJ also denied Disha's applications for withholding of removal and relief under the CAT because he found that Disha did not fall within the social group he proposed and, even if he did, he would not suffer persecution or torture on account of his membership in it. The BIA affirmed the IJ's findings on appeal. We deny the petition for review.

## Background

Although most of Disha's family immigrated to the United States in December 2001 after his mother received lawful permanent resident status through the visa lottery, Disha stayed behind because he was more than 21 years old and not eligible for a visa. *See* 8 U.S.C. § 1101(b)(1) (defining child entitled to benefits under Act as under 21); 8 U.S.C. §§ 1153(c), (d) (explaining eligibility for visa through diversity lottery). A year later, on December 12, 2002, Disha used a false passport to enter the United States.

Disha came to the attention of immigration authorities after he was convicted of a criminal offense in Illinois. In early 2004, Disha's dissatisfaction with not landing a job at a hotel in a Chicago suburb led to his conviction for harassing one of the hotel's human resources employees. Disha was sentenced to probation, and in April 2005 his probation officer contacted immigration authorities, who arrested him a month later. On June 27, 2005, more than two years after entering the country, Disha applied for asylum, claiming persecution on account of his membership in a social group.

At his hearing, Disha testified that he developed a mental illness after his family left Albania. He testified that he "was very sick," was unable to sleep, and had tried to commit suicide by cutting his fingers. Concerned, a neighbor took Disha to see a psychiatrist in Tirana, Albania, where he was diagnosed with "Psychiatric Affective Irregulation" and treated with anti-psychotic, anti-depressant, and anti-anxiety medication, along with certain unspecified "shots." Disha's aunt cared for him after his parents left, but they returned to Albania in 2001 when they learned of his illness. His mother stayed with him for six months until he bought the fake passport and left Albania for the United States.

Disha's attorney characterized the particular social group in this case as "all mental patients who cannot receive proper medical treatment" in Albania. He then provided evidence about the inadequacy of care for the mentally ill there. That evidence consists of reports from two international organizations which confirm a small number of psychiatric hospitals and psychiatrists serving the entire country. The IJ remarked that it seemed like counsel was making an unsuccessful argument "that people with mental disabilities are being persecuted in Albania because of a lack of resources."

Counsel then called Disha's mother, Figuret, who described the medical treatment her son received in the United States. According to Figuret, Disha was still suffering from his mental condition when he came to the United States, and so they began looking for a doctor for him. Disha's sister eventually found a clinic that would treat him, and the medical records he submitted show that he saw a

psychiatrist there—Dr. Pravin Bhatt—as early as January 2004. Dr. Bhatt diagnosed Disha with "Psychosis NOS," and prescribed him Zyprexa, at 15 milligrams a day. Dr. Bhatt also indicated in several reports that Disha's condition was stable. For example, in November 2004, Dr. Bhatt reported that despite his earlier diagnosis of psychosis NOS, he had "not seen any evidence of psychosis in this patient." In April 2005, Dr. Bhatt wrote that Disha "has been stable ever since I have been seeing him."

Figuret testified that she feared Disha's condition would worsen if he were forced to return to Albania. She emphasized that Disha needed his medicine to remain stable, and that if he returned to Albania they would "make fun of him" and "treat him bad." When asked whether Zyprexa was available in Albania, Figuret replied that it wasn't, and she knew that because "if it was there, [Disha] was going to have it."

The IJ denied Disha's application for asylum because it was untimely. Disha did not file his application until June 2005, well beyond the one-year deadline after his arrival in the United States in December 2002. The IJ recognized that extraordinary circumstances—Disha's mental condition—could excuse his untimely filing, at least for the period after his arrival before he received treatment. But the IJ ultimately determined that, because Disha could have filed for asylum as early as January 2004 (when he began receiving medical treatment and his mental condition stabilized), he did not file his June 2005 asylum application within a reasonable time. The IJ also noted that given the other documents submitted on Disha's behalf (an I-765, I-730, and a visa petition—Form I-130), either he or his family could have applied for asylum earlier. The IJ remarked that Disha filed the asylum application only as a last resort after being placed in removal proceedings.

The IJ went on to say that, even if Disha's application were timely, he failed to establish that he had a well-founded fear of being persecuted if returned to Albania. The IJ commented that Disha's proposed social group—"all mental patients who cannot receive proper medical treatment in Albania"—was too broad to constitute a cognizable social group under the definition of "refugee." And, the IJ continued, even if Disha were assumed to have proposed a cognizable social group, he would not belong to that group because he received treatment in Albania. The IJ added that, even if the proposed group were cognizable, and even if Disha were in it, the evidence did not establish that he would be persecuted on account of it. Because Disha did not meet the lower burden of proof required for asylum, the IJ concluded that he could not meet the more stringent standards for withholding of removal or relief under the CAT.

Disha appealed, arguing among other things that the IJ erred as a matter of law in ruling that the proposed social group was too broad to be cognizable. The

BIA determined that Disha failed to challenge the IJ's finding that his asylum application was untimely and summarily affirmed that finding. The BIA then sidestepped whether the social group Disha proposed was cognizable but agreed with the IJ's conclusion that even if it were, Disha did not prove that he would be persecuted or tortured on account of his membership in it if returned to Albania. By noting that the evidence was insufficient to show that Disha could not receive treatment if returned to Albania, the BIA also implicitly agreed with the IJ that Disha did not belong to the social group he proposed.

## Discussion

Disha argues that the BIA erred in determining that he waived his asylum claim by not challenging the IJ's finding that his application was time-barred. He recognizes that he has a jurisdictional problem because 8 U.S.C. § 1158(a)(3), together with § 1158(a)(2)(B), preclude judicial review of any finding that an alien's asylum application was untimely. *See, e.g., Zaidi v. Ashcroft*, 377 F.3d 678, 681 (7th Cir. 2004). But he insists that whether "exceptional circumstances" excuse an untimely application is a question of law over which the REAL ID Act of 2005 provides this court with jurisdiction. He is wrong. As this court explained in *Vasile v. Gonzales,* 417 F.3d 766, 768-69 (7th Cir. 2005), under the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)(1)(iii), determinations about whether "exceptional circumstances" exist cannot be shoehorned into the "question of law" category and are thus are insulated from review by § 1158(a)(3). Disha's arguments that the BIA erred in analyzing his claim for asylum are thus beyond review. *See Vasile*, 417 F.3d at 769.

Although the merits of Disha's asylum claim are not reviewable, this court can nevertheless review them as they pertain to his claim for withholding of removal. *See Zaidi*, 377 F.3d at 681; *Nigussie v. Ashcroft,* 383 F.3d 531, 534 (7th Cir. 2004). Without addressing how he meets the stricter burden of proof for that relief, Disha argues generally that "people who suffer from a mental illness" constitute a social group. He does not identify any error on the part of the BIA, however, and instead baldly asserts that this court should decide in the first instance that he has proposed a cognizable social group.

But that argument is irrelevant. The BIA did not reach the question whether Disha had proposed a cognizable social group because it ruled that, "even if" the group was cognizable, Disha did not prove that he belonged to it or that he would suffer future persecution on account of his membership in it. Disha does not challenge those determinations and, consequently, provides no basis for reversing the BIA's decision. *See Rehman v. Gonzales,* 441 F.3d 506, 509 (7th Cir. 2006) (explaining that "courts do not set aside agencies' decisions unless mistakes cause prejudice"); *Ambati v. Reno*, 233 F.3d 1054, 1062 (7th Cir. 2000) (seeing no reason to

reverse where petitioners had not challenged the accuracy of BIA's findings).

Moreover, the only case Disha cites to support his argument that we can consider the mentally ill a social group, *Tchoukhrova v. Gonzales*, 404 F.3d 1181 (9th Cir. 2005), was recently vacated by the Supreme Court on exactly this point, *Gonzales v. Tchoukhrova*, 75 U.S.L.W. 3162 (U.S. Oct. 3, 2006). In *Tchoukhrova*, the Ninth Circuit decided in the first instance that Russian children with cerebral palsy (who are precluded from receiving public medical support), and their parents who care for them, constitute a social group, and that the parent, spouse, and child petitioners were entitled to withholding because of their membership in it. 404 F.3d at 1189-90. The Supreme Court remanded *Tchoukhrova* for further consideration in light of *Gonzales v. Thomas*, 126 S.Ct. 1613 (2006) (per curiam), which holds that a court of appeals, upon review of an administrative agency's decision, "is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." 126 S.Ct. at 1615 (internal quotation marks omitted). *Thomas* therefore vacated and remanded the Ninth Circuit's en banc decision that a particular family constituted a social group for asylum purposes. *See id.* Thus, Disha's assertion that this court should determine in the first instance whether his proposed class constitutes a social group runs directly contrary to *Thomas*. *See Shao v. BIA*, 465 F.3d 497, 503 (2d Cir. 2006) (remanding under *Thomas* for BIA to determine in first instance whether having more children than Chinese law allows establishes a "well founded fear of persecution" supporting an asylum claim); *Ucelo-Gomez v. Gonzales*, 464 F.3d 163, 170 (2d Cir. 2006) (remanding in light of *Thomas* for BIA to decide whether affluent Guatemalans constitute a "particular social group" within meaning of Immigration and Naturalization Act).

That said, it is doubtful that "mental patients who cannot receive proper treatment in Albania" could constitute a "particular social group" for asylum purposes. *See Raffington v. INS*, 340 F.3d 720, 723 (8th Cir. 2003) (rejecting claim that mentally ill persons in Jamaica constitute a "particular social group" because "the mentally ill are too large and diverse a group to qualify"). But it is Disha's failure to challenge the BIA's ruling that he is not a member of his proposed class that ultimately dooms his appeal. The petition for review is DENIED.