Ruiz-Almanzar v. Ridge

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2006

(Argued: March 29, 2007)                                              Decided: May 8, 2007)

Docket No. 05-4380-ag

————————

DARIO RUIZ-ALMANZAR,

*Petitioner*,

—v.—

THOMAS RIDGE, Secretary, Department of Homeland Security, MICHAEL J. GARCIA, Assistant Secretary, Bureau of Immigration and Customs Enforcement, EDWARD J. MCELROY, Interim New York City Director, Bureau of Immigration and Customs Enforcement, BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT, DEPARTMENT OF HOMELAND SECURITY,

*Respondents*.

————————

B e f o r e : SOTOMAYOR and KATZMANN, *Circuit Judges*, and GERTNER, *District Judge*.[*]

————————

Appeal from a decision of the Bureau of Immigration Appeals, holding that the petitioner is ineligible for relief under Immigration and Nationality Act § 212(c). We hold that the petitioner, a deportable alien, is ineligible for this relief, notwithstanding the fact that he also seeks to apply

———————————————

[*] The Honorable Nancy Gertner, District Judge, United States District Court for the District of Massachusetts, sitting by designation.

for an adjustment of his immigration status. Accordingly, the petition for review is **DENIED**, and the decision of the BIA is **AFFIRMED**.

_____

APPEARING FOR PETITIONER: MATTHEW L. GUADAGNO (Jules E. Coven and Kerry W. Bretz, *on the brief*), New York, N.Y.

APPEARING FOR RESPONDENTS: ANDREW M. MCNEELA (Kathy S. Marks, *on the brief*), *for* Michael J. Garcia, United States Attorney for the Southern District of New York, New York, N.Y.

_____

KATZMANN, *Circuit Judge*:

In 1996, Congress amended the Immigration and Nationality Act ("INA") to provide that certain discretionary relief under § 212(c) would no longer be available to aliens who are "deportable by reason of having committed" any of a number of specified criminal offenses. 8 U.S.C. § 1182(c) (repealed 1996). Petitioner, an alien deportable under this provision, claims that he is nonetheless eligible for § 212(c) relief if he applies for it simultaneous with an application for adjustment of his immigration status. We disagree, and hold that § 212(c) relief is not available to a deportable alien notwithstanding the fact that he also seeks to apply for adjustment of status.

I.

Under the INA, certain specified classes of aliens are "ineligible to be admitted to the United States." 8 U.S.C. § 1182(a). Prior to its repeal in 1996, INA § 212(c) granted the Attorney General the discretion to waive these grounds of exclusion for "[a]liens lawfully

admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who [were] returning to a lawful unrelinquished domicile of seven consecutive years." *Id.* § 1182(c) (repealed 1996). Although the statute explicitly granted the Attorney General the authority to exercise this discretion only in the context of exclusion proceedings, the Board of Immigration Appeals (the "BIA"), the agency charged with enforcement of the INA, *Jian Hui Shao v. BIA*, 465 F.3d 497, 502 (2d Cir. 2006), expanded the Attorney General's authority to grant § 212(c) relief in two respects.[1] First, it extended it to aliens in deportation proceedings who had temporarily left the United States after having committed a deportable offense. *Matter of G—A—*, 7 I. & N. Dec. 274 (BIA 1956). Second, it extended it to aliens in deportation proceedings who had not temporarily left the United States, but who sought such relief in conjunction with an adjustment of status under INA § 245(a). *Matter of Smith*, 11 I. & N. Dec. 325 (BIA 1965).[2] In *Francis v. I.N.S.*, 532 F.2d 268 (2d Cir. 1976), we further extended § 212(c) relief to aliens in deportation proceedings who had not left the country, holding that the existing distinction violated equal protection principles. *Id.* at 272.

---

[1] Prior to 1996, there were two distinct proceedings for adjudicating the legal status of aliens—"deportation" proceedings and "exclusion" proceedings. The former were provided to "aliens who had formally 'entered' the United States," while the latter were provided to aliens "who were seeking entry to the United States and therefore were constructively deemed to be at the border." In 1996, amendments to the INA combined the two proceedings into a single category called "removal proceedings." *Ibragimov v. Gonzales*, 476 F.3d 125, 130 n.11 (2d Cir. 2007). The INA still uses the term "deportable" to refer to certain aliens who "are placed in removal proceedings after having been formally admitted to the country." *Id.*

[2] Section 245(a) of the INA provides that the Attorney General may adjust an alien's status "to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a).

Thus, although the INA expressly made § 212(c) relief available only to aliens in exclusion proceedings, by 1996, the courts and the BIA had extended it to cover aliens in deportation proceedings. Against that background, Congress enacted the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") § 440(d), Pub. L. No. 104-32, 110 Stat. 1214, 1277 (amending 8 U.S.C. § 1182(c)), which provided that § 212(c) "shall not apply to an alien who is deportable by reason of having committed" certain specified criminal offenses, 8 U.S.C. § 1182(c) (repealed 1996).[3]

In September 1978, Dario Ruiz-Almanzar, a native and citizen of the Dominican Republic, entered the United States as a lawful permanent resident ("LPR"). On July 3, 1996, he was convicted of criminal possession of stolen property after trial in the Supreme Court of the State of New York. In February 1997, the INS issued an Order to Show Cause charging that Ruiz-Almanzar was deportable as an alien who, after entering the United States, was convicted of an aggravated felony.[4] *See* 8 U.S.C. 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."). At a hearing, the IJ determined that Ruiz-Almanzar was deportable as charged and ineligible for discretionary relief from deportation due to the 1996 conviction. On appeal, the BIA remanded solely so the IJ, who had issued only a form order, could provide an adequate written decision in the order. On remand, Ruiz-Almanzar argued that AEDPA § 440(d) could not be retroactively applied to cover him

---

[3] Shortly thereafter, Congress eliminated § 212(c) relief in its entirety. Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") sec. 304(b), 110 Stat. at 3009-597.

[4] Ruiz-Almanzar does not dispute that his New York State conviction constitutes an aggravated felony.

because his entire criminal proceeding ended before AEDPA's effective date. The IJ rejected this argument, holding that AEDPA § 440(d) could be applied to Ruiz-Almanzar and that he was therefore ineligible for a § 212(c) waiver.

On appeal to the BIA, Ruiz-Almanzar again argued that § 440(d) was impermissibly retroactive, and while his appeal was pending, he moved to remand the matter to the IJ so he could apply for an adjustment of status such that he would no longer be "deportable" within the meaning of AEDPA § 440(d).[5] The BIA denied Ruiz-Almanzar's motion to remand and dismissed his appeal, holding that AEDPA's bar on § 212(c) relief was not retroactive as applied to Ruiz-Almanzar because the statute was enacted prior to his conviction. The BIA also held that he could not circumvent the § 440(d) bar by applying for adjustment of status, relying on its prior decision in *Matter of Gonzalez-Camarillo*, 21 I. & N. Dec. 937 (BIA 1997) (en banc). In *Gonzalez-Camarillo*, the BIA had rejected the argument that an alien in deportation proceedings could apply for a § 212(c) waiver for the "limited purpose of removing the exclusion grounds that render him inadmissible . . . [and therefore unable] to establish eligibility for adjustment of status." *Id.* at 940. The BIA held that "the language of the AEDPA amendments is unambiguous. It applies to any alien 'who is deportable' by reason of having committed any of the specified criminal offenses. The statute clearly bars all such deportable aliens from applying for section 212(c) relief in deportation proceedings." *Id.*[6] Ruiz-Almanzar moved for

_____

[5] Ruiz-Almanzar argues that he is eligible for adjustment of status because he is married to a United States citizen and is the beneficiary of an approved I-130 visa.

[6] Three members of the BIA dissented, holding that "[a]lthough [the petitioner] requires a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, the statute . . . does not preclude such a waiver to overcome excludability and qualify for adjustment of status, nor does it bar such applications in deportation proceedings." *Matter of Gonzalez-*

reconsideration, and the BIA denied that motion.

In April 2003, Ruiz-Almanzar filed a habeas corpus petition in the United States District Court for the Southern District of New York. The district court transferred the case to this Court as a petition for review under the REAL ID Act of 2005 ("REAL ID Act"). *See* REAL ID Act § 106(c), Pub. L. No. 109-13, 119 Stat. 231, 311.[7] In his briefs before us, Ruiz-Almanzar concedes that *Matter of Gonzalez-Camarillo* governs his case, but argues that it was wrongly decided. Specifically, he argues that the BIA erred in holding that the language of the AEDPA amendment is unambiguous and that the BIA's interpretation of the amendment should not be entitled to deference.

II.

---

*Camarillo*, 21 I. & N. Dec. at 942 (citation omitted).

[7] Section 106 of the Act provided that federal district courts no longer had jurisdiction to review final orders of removal through the habeas statute, 28 U.S.C. § 2241. Instead, "a petition for review filed with the appropriate court of appeals" would be the "sole and exclusive means" by which an alien could challenge such an order. REAL ID Act § 106(a), 119 Stat. at 310. District courts were instructed to transfer those habeas petitions challenging a final order of removal that were pending at the time of REAL ID's enactment to the court of appeals in which the petitions could have been properly brought under 8 U.S.C. § 1252; they were then to be converted by the court of appeals to petitions for review under that section. *Id.* § 106(c), 119 Stat. at 311. *See also Moreno-Bravo v. Gonzales*, 463 F.3d 253, 256 (2d Cir. 2006).

In this case, Magistrate Judge James C. Francis issued a Report and Recommendation ("R&R") before the district court transferred the case. In his R&R, Judge Francis recommended dismissal of the petition on the ground that "[s]ection 440(d) of the AEDPA forecloses an alien in deportation proceedings from seeking a waiver of a ground of deportability under § 212(c) of the INA." Judge Francis determined that the statute was ambiguous and that deference to the BIA's construction of the amendment was appropriate. Ruiz-Almanzar objected to the Report and Recommendation, but the district court transferred the case to this court without issuing a decision.

-6-

In considering whether AEDPA § 440(d) bars Ruiz-Almanzar from claiming § 212(c) relief, we are guided by the familiar two-step analysis set out in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (recognizing that "the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication" (quotation marks omitted)). We must first ask "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. Here, we believe that the intent of Congress was clear. Against the background of a steady expansion in the availability of § 212(c) relief, Congress enacted a broad, categorical prohibition on the extension of that relief to aliens "who [are] deportable by reason of having committed" certain specified criminal offenses. 8 U.S.C. § 1182(c) (repealed 1996). There is nothing in the text of that amendment, or the context in which it was enacted, that suggests that Congress meant anything other than what it said, that is, that an alien like Ruiz-Almanzar who is deportable for having committed one of the enumerated offenses cannot apply for § 212(c) relief.

Ruiz-Almanzar argues that the statute is ambiguous because it is "silent as to whether § 212(c) relief may be sought in conjunction with adjustment of status." However, a statute that categorically precludes "deportable" aliens from discretionary relief need not specifically reference each sub-class of affected aliens to be unambiguous. Indeed, given that Congress was likely aware that deportable aliens had historically been allowed to apply for § 212(c) relief in conjunction with an application for adjustment of status, the fact that Congress did not explicitly

exclude deportable aliens in Ruiz-Almanzar's situation from the amendment's prohibition suggests that it did not intend to exempt them.

Ruiz-Almanzar likens his case to *Matter of Devison-Charles*, 22 I. & N. Dec. 1362 (BIA 2000), in which the BIA held that a "youthful offender adjudication" was not a conviction within the meaning of the immigration laws because the BIA had "consistently held that . . . findings of juvenile delinquency are not convictions for immigration purposes." *Id.* at 1365. However, the BIA has never held that deportable aliens who seek an adjustment of status are not deportable aliens for immigration purposes. Although we have said that applicants for adjustment of status are "'assimilated' to the position of . . . alien[s] seeking entry into this country," *Matter of Jiminez-Lopez*, 20 I. & N. Dec. 738, 741 (BIA 1993), this statement refers only to the fact that such applicants, like aliens seeking entry, must show that they are eligible for "admissibility under section 212 of the Act," *id.* (citation omitted). These applicants seeking adjustment formally remain deportable aliens until their status is actually adjusted. *See, e.g.*, *United States v. Gonzalez-Roque*, 301 F.3d 39, 42 n.1 (2d Cir. 2002) ("The adjustment of status procedure allows a *qualifying* deportable alien to change his status to that of an alien who had not committed the offense which otherwise rendered him deportable." (emphasis added)); *see also Matter of Rainford*, 20 I. & N. Dec. 598, 602 (BIA 1992) ("[I]f granted adustment of status to lawful permanent resident, the respondent will no longer be deportable on the basis of this prior conviction."). Thus, under the governing statutory scheme and the case law interpreting that scheme, Ruiz-Almanzar remains a deportable alien unless he can qualify for an adjustment of status, and he cannot qualify for adjustment of status without the § 212(c) relief for which he is ineligible. *See* 8 U.S.C. § 1255(a) (providing that an alien's status can be adjusted only if he can

show, *inter alia*, that he is "admissible to the United States for permanent residence"); *see, e.g.*, *Guaylupo-Moya v. Gonzales*, 423 F.3d 121, 127 n.8 (2d Cir. 2005). We therefore hold that AEDPA § 440(d) bars Ruiz-Almanzar, as a deportable alien, from claiming § 212(c) relief, notwithstanding the fact that he also seeks to adjust his immigration status.

Even assuming, *arguendo*, that the statute were ambiguous, our holding today would be the same. "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Here, for all of the reasons previously discussed, we believe the text and history of the AEDPA amendment support the BIA's construction of the statute. Ruiz-Almanzar argues that the BIA's interpretation should not be accorded deference because the BIA failed to consider its prior decisions in this area, but the BIA expressly noted, and distinguished, those precedents. Thus, this is not a case where the agency "announce[d] and follow[ed] . . . a general policy by which its exercise of discretion will be governed" and then "irrational[ly] depart[ed] from that policy." *I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996).[8]

Finally, Ruiz-Almanzar argues that the rule of lenity requires us to construe the statute in his favor. The rule of lenity provides that "lingering ambiguities in deportation statutes" must be construed "in favor of the alien." *I.N.S. v. St. Cyr*, 533 U.S. 289, 320 (2001) (quotation marks omitted); *see also Vargas v. I.N.S.*, 938 F.2d 358, 363 (2d Cir. 1991). However, this doctrine is one "of last resort, to be used only after the traditional means of interpreting authoritative texts

---

[8] Likewise, we find no merit in Ruiz-Almanzar's argument that the BIA's discussion of legislative history in *Matter of Gonzalez-Camarillo* was inconsistent with its discussion of legislative history in *Matter of Fuentes-Campos*.

have failed to dispel any ambiguities." *United States v. Hescorp, Heavy Equip. Sales Corp.*, 801 F.2d 70, 77 (2d Cir. 1986). It cannot be the case, as Ruiz-Almanzar suggests, that the doctrine of lenity must be applied whenever there is an ambiguity in an immigration statute because, if that were true, it would supplant the application of *Chevron* in the immigration context. Yet it is well-established that *Chevron* deference is appropriate when we confront ambiguities in the immigration statutes. *See, e.g.*, *Aguirre-Aguirre*, 526 U.S. at 424 ("It is clear that principles of *Chevron* deference are applicable to [the immigration] statutory scheme."); *Gill v. I.N.S.*, 420 F.3d 82, 89 (2d Cir. 2005) ("Because the BIA has expertise applying and construing immigration law, we afford *Chevron* deference to its construction of undefined statutory terms such as 'moral turpitude.'"). We apply the rule of lenity only when none of the other canons of statutory construction is capable of resolving the statute's meaning and the BIA has not offered a reasonable interpretation of the statute. That is not the case here and thus we need not construe the statute in favor of Ruiz-Almanzar under the rule of lenity. Therefore, even were the statute ambiguous, we would defer to the BIA's permissible construction of it and hold that Ruiz-Almanzar is not entitled to § 212(c) relief.

IV.

Accordingly, for the foregoing reasons, the petition for review is DENIED, and the decision of the BIA is AFFIRMED.