**Jian Xing HUANG, Petitioner,**

v.

**UNITED STATES IMMIGRATION
AND NATURALIZATION
SERVICE, Respondent.**

Docket No. 03–4108.

United States Court of Appeals,
Second Circuit.

Argued: June 9, 2005.

Decided: Aug. 29, 2005.

Gary J. Yerman, New York, New York, for Petitioner.

Andrew M. McNeela, Kathy S. Marks, Assistant United States Attorneys for the Southern District of New York, David N. Kelley, United States Attorney for the Southern District of New York, New York, New York, for Respondent.

Before: JACOBS, SACK, RAGGI, Circuit Judges.

PER CURIAM.

Jian Xing Huang petitions for review of a December 19, 2002 order of the Board of Immigration Appeals ("BIA") that denied his application for asylum and withholding of removal, and in so doing, reversed the decision of the Immigration Judge ("IJ"). Huang argues that the BIA (i) applied the incorrect standard of review in reversing the IJ, and (ii) erroneously concluded that he had failed to establish a likelihood of future persecution based on his having had

two children in this country, in violation of China's family planning policy. Because the BIA employed the correct standard of review, and because we agree with the BIA that Huang did not meet his burden, we deny the petition.

## I

Huang entered the United States illegally sometime in 1990. In 1993, he filed an application for asylum and withholding of removal based on his participation in the student democracy movement. While his application was pending, Huang met and married a Chinese citizen here in the United States. She soon gave birth to a daughter. In 1999, the INS served Huang with a notice to appear.

When the hearing opened in the spring of 2000, Huang filed an amended asylum application citing his fear of future persecution, in particular, that he would be forcibly sterilized should he return to China. He cited Chinese family planning policy permitting only one child and the forcible sterilization of his sister-in-law. The hearing was adjourned to December 2000. By then, Huang's wife was pregnant with their second child. The IJ granted Huang's application for asylum and withholding of removal finding that it was "reasonable" for Huang to fear being subjected to forcible sterilization if removed to China.

The INS argued on appeal to the BIA that Huang had not sustained his burden of showing a well-founded fear of future persecution, because the evidence of country conditions undermined the claim and because Huang had provided little evidence as to the circumstances surrounding the alleged forced sterilization of his sister-in-law. Moreover, there was no evidence in the record as to how (if at all) Chinese family planning policy applied to the parents of children born abroad.

Huang did not file a brief in opposition or cross-appeal any aspect of the decision of the IJ in order to preserve any other potential grounds for asylum. Relying on the background materials, the BIA found that there was no indication that parents of foreign-born children were subject to persecution, or anything more than modest fees or fines based on the "additional housing, educational, and medical costs" of such children.

## II

Huang argues first that the BIA should have reviewed the IJ's opinion under the indulgent "clearly erroneous" standard set out in 8 C.F.R. § 3.1(d)(3)(i) (2000) (recodified at § 1003.1(d)(3)(i) (2004)). It is not clear from the BIA's opinion what standard of review was applied. But it is clear that the provision Huang cites is inapplicable here, because it does "not apply to appeals filed before September 25, 2002," 8 C.F.R. § 3.1(f) (2002) (recodified at § 1003.3(f) (2004)), and the INS filed its appeal to the BIA in January 2001.

Since 8 C.F.R. § 3.1(d)(3)(i) changed the longstanding *de novo* standard of review, *see* BIA: Procedural Reforms to Improve Case Management, 67 Fed.Reg. 54878, 54888–89 (Aug. 26, 2002) (BIA "asserted its authority to conduct *de novo* review of cases on appeal from" the IJs for almost 50 years prior to rule change.), the BIA did not owe the IJ the deference of clear error review on appeals filed before September 25, 2002. *See Pilica v. Ashcroft*, 388 F.3d 941, 949 (6th Cir.2004) (holding "clearly erroneous" standard inapplicable to appeals before September 25, 2002; BIA review "should have been conducted *de novo*"); *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir.2004) ("Because the INS filed its appeal with the BIA... more than one year before the September 25, 2002

deadline, section 1003.1(d)(3)(1) [sic] is inapplicable in this case. The BIA thus did not err in conducting a *de novo* review.")

### III

This court reviews "the factual findings underlying the BIA's determinations under the substantial evidence standard, reversing only if 'no reasonable factfinder could have failed to find' that petitioner suffered past persecution or had a well-founded fear of future persecution or torture." *Ramsameachire v. Ashcroft,* 357 F.3d 169, 177 (2d Cir.2004) (quoting *Diallo v. INS,* 232 F.3d 279, 287 (2d Cir.2000)). The BIA's interpretation of the Immigration and Naturalization Act is reviewed with deference. *See Ming Lam Sui v. INS,* 250 F.3d 105, 112 (2d Cir.2001); *Michel v. INS,* 206 F.3d 253, 262 (2d Cir. 2000).

To be eligible for asylum, Huang had the burden of demonstrating that he was subject to past persecution or had a well-founded fear of future persecution on the basis of political opinion or his membership in a particular group. 8 U.S.C. § 1101(a)(42); *See Xin–Chang Zhang v. Slattery,* 55 F.3d 732, 737–38 (2d Cir.1995); 8 C.F.R. §§ 208.13(b)(1)-(2)(2000 & 2002). The IJ granted Huang's application on the basis of likely future persecution. Huang did not cross-appeal or offer any alternative basis for asylum or withholding. The BIA reversed the IJ, concluding that Huang had not established likely future persecution.

A well-founded fear has "both a subjective and an objective component." *Gomez v. INS,* 947 F.2d 660, 663 (2d Cir. 1991). An alien must therefore "present credible testimony that he subjectively fears persecution and establish that his fear is objectively reasonable." *Ramsameachire,* 357 F.3d at 178 (citation omitted). Objective reasonableness entails a showing that a reasonable person in the petitioner's circumstances would fear persecution if returned to his native country. 8 C.F.R. § 208.13(b)(2); *Xin–Chang Zhang,* 55 F.3d at 737–38.

By statute, "a person who has a well founded fear that he . . . will be forced to undergo [involuntary sterilization] or subject to persecution for" "failure or refusal to undergo such a procedure or for other resistance to a coercive population control program" "shall be deemed to have a well founded fear of persecution on account of political opinion." 8 U.S.C. § 1101(a)(42). To prevail on that ground, Huang was required to offer credible, specific, and detailed evidence that his well-founded fear is either of forcible sterilization or of some other sort of persecution based on resistance to China's family planning policies. *Id.; see also* 8 C.F.R. § 208.13(a); *Melendez v. U.S. Dep't of Justice,* 926 F.2d 211, 215 (2d Cir.1991) (noting that applicant must provide documentary proof or testimony that is "credible, persuasive, and refers to *specific* facts" (internal quotation marks omitted) (emphasis in original)).

The BIA did not err in determining that Huang had failed to meet this burden.* Fujian, according to the record, has a relatively lax family-planning policy; a second child is often permitted if the first child is a girl. Since Huang's first child is a daughter, there is no indication that Huang would be subject to forced steriliza-

---

\* In so ruling, the BIA apparently assumed, without specifically deciding, that a Chinese national can support an asylum claim with evidence of children born to him after his illegal entry into the United States. We do likewise, although we note that such circumstances raise difficult policy concerns that may well warrant further agency and Congressional consideration.

tion for having a second child—even if the family planning regime applied equally to births abroad.

Moreover, as the BIA found, a country condition report in the record indicates "no reports of any [Chinese] national policy" with regard to foreign-born children, and that couples returning to China with more children than they would have been permitted at home are "at worst, given modest fines." The BIA was not bound by the country condition report in the record, but it was entitled to rely on it, so long as in doing so it did not overlook any contradictory evidence directly presented by the petitioner. *See Tian–Yong Chen v. INS*, 359 F.3d 121, 127–30 (2d Cir.2004) (remanding where IJ, in reliance on general conditions in a country report, had failed to consider direct, particular evidence of petitioner's past persecution).

The only relevant evidence that Huang adduced to support his claim was testimony about his sister-in-law's experiences, the record of his daughter's birth, and a letter indicating his wife's pregnancy. Huang's testimony that his sister-in-law had been forcibly sterilized was sparse and uncorroborated, and would not be probative even if believed because Huang omitted any evidence that might bear on whether Huang might be in similar circumstances (such as the locality in which this woman lived, when she was sterilized, her marital status and the number and sex of her children at that time, and so on). Moreover, Huang has two older sisters, one with two sons and one with three children, and he made no allegation that they had been penalized in any way for having children.

■ In the absence of solid support in the record for Huang's assertion that he will be subjected to forced sterilization, his fear is speculative at best. *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 440, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (well-founded fear does not require high probability of persecution, but does require "an objective situation... established by the evidence") (quoting *INS v. Stevic*, 467 U.S. 407, 424–25, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984)). "Because the withholding of removal analysis overlaps factually with the asylum analysis, but involves a higher burden of proof, an alien who fails to establish his entitlement to asylum necessarily fails to establish his entitlement to withholding of removal." *Ramsameachire*, 357 F.3d at 178.

For the foregoing reasons, we deny Huang's petition.