[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 6, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-10063

_____

BIA No. A77-641-841

YA-ZHEN ZOU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(June 6, 2007)**

Before PRYOR, KRAVITCH and ALARCON,* Circuit Judges.

PER CURIAM:

_____

* Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

Ya-Zhen Zou, a native and citizen of China, petitions this court for review of the Board of Immigration Appeals's ("BIA") affirmance of the Immigration Judge's ("IJ") order of removal and denial of asylum and withholding of removal, 8 U.S.C. §§ 1158 and 1231.[1]  The question before us is whether the record compels the conclusion that Zou established a well-founded fear of future persecution if she returned to China.  After oral argument and a thorough review of the record, we determine that the record does not *compel* the conclusion that Zou had a well-founded fear that was objectively reasonable.  Accordingly, we deny the petition.

I. Background

Zou, a citizen of China who had been living in the Fujian Province, entered the United States without valid entry documents in September 1999, and the INS served her with a Notice of Appeal, charging her with removability.  She filed an application for asylum and withholding of removal on the grounds that she would be persecuted if she returned to China because she opposed China's coercive family planning policy, her mother had been ordered to implant an IUD and later was sterilized after giving birth to a third child, and Zou already had two children.[2]

---

[1]  Zou also originally requested relief under the United Nations Convention Against Torture ("CAT"), which the IJ denied.  Because Zou does not challenge this decision on appeal, she has abandoned it and we do not discuss it further.  Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 (11th Cir. 2005).

[2]  Zou's asylum application was untimely, but the IJ found that extraordinary circumstances excused the late filing.  By the time of the hearing, Zou had given birth to her second child.

In support of her application, Zou submitted an affidavit from her aunt confirming that Zou's mother had been sterilized in 1990. She also submitted copies of the U.S. State Department Country Reports from 2000, which recognized the "intense pressure to meet family planning targets set by the Government" and had "resulted in documented instances . . . of forced abortion and sterilization." The 2003 Report noted that coercive measures "continued to be a problem," although it acknowledged that the policy was applied more strictly in the cities than in rural and remote areas and that the National Population and Family Planning Commission had "issued circulars nationwide prohibiting birth planning officials from coercing women to undergo abortions or sterilizations against their will."

Zou also submitted an affidavit from John Shields Aird, a retired U.S. Census Bureau demographer and specialist on Chinese population policy. According to Aird, Chinese couples living abroad would be subject to the family planning policy upon return to China, and forced sterilizations continued to be used to promote the policy. Aird noted Fujian administrative decisions as evidence that Chinese nationals living abroad were not exempt from the policy. Aird rejected many of the findings of the State Department reports and identified documents discussing a Chinese woman who had been denied asylum in Australia and had been forced to under-go a late-term abortion upon return to China.

In opposition to the asylum request, the Government submitted additional reports and articles, which indicated that forced sterilizations were no longer tolerated and that Fujian officials "lacked the capacity or will to effectively implement" the family planning policy. One article in particular noted that China's one-child policy has been implemented in enormously varied ways, with some areas tolerating families with five or six children and other areas mandating sterilization after the birth of one child. The articles further noted that a large number of people were leaving China and seeking asylum in order to avoid sterilization.

According to an undated profile of asylum claims from China, Fujian authorities did not handle births in the United States strictly, with families receiving modest fines for violating the policy. A 2001 report from the Department of Justice confirmed that in some localities "[o]verseas Chinese [we]re largely exempt from domestic birth planning rules and can return to China with a pregnancy or a child born abroad without being penalized."

The IJ denied relief, finding that there was no evidence of past persecution and no well-founded fear of future persecution, as the evidence did not establish that Zou would face sterilization due to the birth of her second child. The IJ noted that there was no evidence Zou was pregnant with or had given birth to a third child. The IJ further found that the evidence showed that the coercive policies

4

were not enforced and that the worst that would happen is that Zou would be given a fine.

Zou appealed to the BIA and submitted evidence that she was then pregnant with her third child. She also moved to remand to add into evidence the 2004 Country Report, which acknowledged that coercion still occurred, and an affidavit from her other aunt explaining that the aunt had been sterilized when she was deported back to China from Japan in 2002 after the birth of her second child. The BIA denied the motion to remand and dismissed the appeal, finding that the record did not establish a reasonable probability that Zou would be sterilized if returned to China. Zou now petitions this court for review, challenging the IJ's finding that she did not establish a well-founded fear of future persecution.[3]

II. Petition for Review

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Id. In this case, the BIA "agree[d] with the Immigration Judge that the evidence of record establishes neither a reasonable possibility nor a clear probability that the respondent will be forcibly sterilized in

---

[3] Zou does not specifically challenge the denial of the motion to remand, and, therefore, she has abandoned it. Sepulveda, 401 F.3d at 1228. Thus, the evidence of Zou's third pregnancy and the sterilization of her aunt in 2002 are not properly before us.

China for having two American-born children." The BIA made no factual findings on its own, and drew no other legal conclusions. We consider this to be an adoption of the IJ's decision. See id.

To the extent that the IJ's and the BIA's decisions were based on legal determinations, our review is de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). The IJ's and BIA's factual determinations are reviewed under the substantial evidence test, and we "must affirm the [] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84. The substantial evidence test is "deferential" and does not allow "re-weigh[ing] the evidence from scratch." Mazariegos v. Office of U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001). "To reverse the fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (considering withholding of removal claim). The fact that the evidence may support a contrary conclusion is not enough to justify reversal of administrative findings. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

An alien who arrives in or is present in the United States may apply for asylum. See 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if an alien meets the INA's definition of "refugee." INA § 208(b)(1)(A), 8

U.S.C. § 1158(b)(1)(A). The INA defines "refugee" as follows:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . political opinion . . . . For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42)(A) & (B). The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar, 257 F.3d at 1284. To establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution. See 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287.

Here, there is no evidence of past persecution. Zou had not been sterilized or otherwise punished for resisting coercive family planning. See Yang v. U.S. Att'y General, 418 F.3d 1198, 1202-03 (11th Cir. 2005). Thus, to be entitled to relief, Zou must demonstrate a future threat to her life or freedom on account of a

protected ground.[4]  8 C.F.R. § 208.13(b)(2).

The well-founded fear of persecution must be subjectively genuine and objectively reasonable.  The subjective component is generally satisfied by the applicant's credible testimony that she genuinely fears persecution.[5]  In most cases, the objective prong can be fulfilled by establishing that she has a "good reason to fear future persecution."  Al Najjar, 257 F.3d at 1289 (internal citations omitted).

Notably, the "precise contours of the 'well-founded fear' inquiry continue to evolve."  Id.  The applicant need not show that it is "more likely than not" that she will be persecuted if returned to her country of origin.  INS v. Cardoza-Fonseca, 480 U.S. 421, 431, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987) (quoting a "leading authority" who argued that a person with only a ten percent chance of persecution would have a "well-founded" fear).

In this case, Zou testified that she was afraid to go back to China because she would be forcibly sterilized, and there is no evidence in the record that her fear was not subjectively real.  The question, then, is whether the fear was objectively reasonable.

---

[4]  The standards for withholding of removal are largely the same as they are for asylum, except that an applicant must prove refugee status "more-likely-than-not."  Mendoza, 327 F.3d at 1287.  As such, if an applicant is unable to meet the standard for asylum, she cannot qualify for withholding of removal under the INA.  Al Najjar, 257 F.3d at 1293, 1303-04.

[5]  In this case, there was no adverse credibility finding by either the IJ or the BIA.  Yang, 418 F.3d at 1201 (holding that IJ's must make "clean determinations of credibility.").

Zou had two children at the time of her removal proceedings.[6]  Zou

submitted evidence that her mother was subjected to forced sterilization after the

birth of her third child, but this coercion occurred in 1990.

The Country Reports acknowledge that the Chinese government now

prohibits forced sterilization and that the frequency of such cases was "declining,"

but it conceded that "the use of physical coercion was difficult to document."  The

reports do not say how much the practice of forced sterilization or other coercive

means have "declined," which makes it difficult for this court to say whether Zou

faces even a ten percent chance of persecution.[7]  Cardoza-Fonseca, 480 U.S. at

431.

Moreover, although there was evidence that the authorities in Fujian

province did not always handle births in the United States strictly, there was also

evidence that Chinese citizens with foreign-born children were subject to the

_____

[6] At oral argument, Zou's counsel clarified that Zou now has a third child.  In her motion
to remand before the BIA, Zou also submitted a letter from her aunt, who had her second child
while living in Japan and who was sterilized upon return to China in 2002.  The BIA denied the
motion. Zou does not specifically challenge this denial on appeal, and, therefore, she has
abandoned it.  Sepulveda, 401 F.3d at 1228.  Thus, this evidence is not properly before us.

[7]  Reliance on the State Department Reports is proper, as the State Department is "the
most appropriate and perhaps the best resource" to obtain information on political situations in
other countries.  Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1243 (11th Cir. 2004); see
also Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1259 (11th Cir. 2006).  Cf., Huang v. INS, 421 F.3d
125, 129 (2d Cir. 2005) (explaining that "the BIA was not bound by the country condition report
in the record, but it was entitled to rely on it, so long as in doing so it did not overlook any
contradictory evidence directly presented by the petitioner"); Krastev v. INS, 292 F.3d 1268,
1277 (10th Cir. 2002) (stating that the "use of such official report does not substitute for an
analysis of the facts of each applicant's individual circumstances").

9

policy. Dr. Aird specifically attested that Chinese couples living abroad were not exempted from punishment when they returned home with unauthorized children born abroad.

Thus, although we agree that there is evidence in the record supporting Zou's claims, Zou faces two difficulties. First, in Yang, this court rejected Aird's testimony and relied on the State Department's 2001 Country Report and a 1998 Asylum Profile, which stated that Fujian Province was known for its lax enforcement of China's family-planning policies. In so doing, this court held, among other things, that Yang had failed to prove a well-founded fear of persecution based on coercive birth control policies in Fujian Province. Yang, 418 F.3d at 1203. Moreover, in Yang, the facts were more dramatic; the applicant had been forced to undergo some type of procedure and pay a fine. In the instant case, Zou has not been forced to undergo any sterilization or birth control procedure.

Second, the question is whether the evidence *compels* the conclusion that the IJ and BIA erred in finding that there was no objectively reasonable well-founded fear of future persecution. We cannot re-weigh the evidence, and our review is deferential. The record cannot merely support reversal, it must *compel* it. Mendoza, 327 F.3d at 1287. Only in rare cases does the record compel reversal. Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1239 (11th Cir. 2006).

On the record before us, and in light of this deferential standard of review,

10

we cannot conclude that the record compels reversal.  Accordingly, we DENY the petition.