*Fu v. Barr*

BIA
Sponzo, IJ
A202 024 313

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of December, two thousand nineteen.

PRESENT:
> DENNIS JACOBS,
> SUSAN L. CARNEY,
> MICHAEL H. PARK,
> *Circuit Judges.*

_____

TIANQI FU,

> *Petitioner,*

> v.                                                    No. 18-1729

WILLIAM P. BARR, UNITED STATES
ATTORNEY GENERAL,

> *Respondent.*

_____

FOR PETITIONER:            GARY J. YERMAN, Esq., New York, NY.

FOR RESPONDENT:            BRENDAN P. HOGAN, Attorney (Joseph H. Hunt, Assistant Attorney General; Song Park, Senior Litigation Counsel, *on the brief*) *for* Office of Immigration Litigation, United States Department of Justice, Civil Division, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Tianqi Fu, a native and citizen of the People's Republic of China, seeks review of a decision of the BIA affirming a decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). *In re Tianqi Fu*, No. A202 024 313 (B.I.A. May 18, 2018), *aff'g* No. A202 024 313 (Immig. Ct. N.Y. City Jun. 27, 2017). We assume the parties' familiarity with the underlying facts and procedural history in this case, to which we refer only as required to explain our decision to deny the petition.

We have considered both the IJ's and the BIA's decisions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *see also Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009). We conclude that substantial evidence supports the agency's determination that Fu failed to establish a well-founded fear of future persecution.

Fu makes no claim of past persecution. Absent past persecution, an applicant may establish eligibility for asylum by demonstrating "that he has a well-founded fear of future

2

persecution, which requires that the alien present credible testimony that he subjectively fears persecution and establish that his fear is objectively reasonable." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004); *see also* 8 C.F.R. § 1208.13(b)(2). To demonstrate such a well-founded fear, an applicant must show either a reasonable possibility that he "would be singled out individually for persecution" or that the country of removal has a "pattern or practice" of persecuting individuals "similarly situated" to him. 8 C.F.R. § 1208.13(b)(2)(iii). Where, as here, an applicant expresses a fear based on activities undertaken solely in the United States, he "must make some showing that authorities in his country of nationality are either aware of his activities or likely to become aware of his activities." *Hongsheng Leng v. Mukasey*, 528 F.3d 135, 143 (2d Cir. 2008). In the asylum context, this requires an applicant to show a "reasonable possibility" that the government will become aware of the activity. *Id.* Absent "solid support" in the record, a petitioner's fear of future persecution is properly deemed "speculative at best." *Jian Xing Huang v. U.S. I.N.S.*, 421 F.3d 125, 129 (2d Cir. 2005).

The agency did not err in finding that Fu failed to establish a well-founded fear of future persecution. Fu did not demonstrate that Chinese officials are aware, or are likely to become aware, of his religious practice should he be removed to China. Fu did

3

not assert that Chinese officials are aware of his religious activities in the United States. Rather, he alleged that Chinese officials knew of his father's membership in a family church and, in 2009, had detained and tortured Fu's father for that reason.

Further, Fu failed to demonstrate that Chinese officials are likely to discover Fu's own religious practice. First, his limited church attendance in the United States made his assertions regarding any possible future church attendance in China speculative. Fu admitted at his 2017 hearing that, since becoming interested in Christianity after arriving in the United States in 2013, he has attended church infrequently. He acknowledged that he therefore was as yet ineligible for baptism. In addition to conceding that his church attendance has been infrequent, Fu further acknowledged that, since he left China in 2013, the police had not visited or threatened his mother on account of his father's past practice, decreasing the likelihood that the police would discover Fu's own religious practice through any threatening visits. In addition, although Fu testified that he planned to continue attending his current U.S. church, that he did not want to abandon his faith if removed to China, and that in China, true believers attend underground churches (as opposed to state-sanctioned churches), he never stated directly that he would regularly attend an underground church in China if removed.

Accordingly, we think it speculative to conclude that, if removed, Fu would attend an underground church in China and be persecuted as a result. Moreover, his testimony that authorities had not approached his mother in recent years and the record evidence showing that tens of millions of people in China are practicing Christians undermined his claim that authorities would learn of his individual activities and persecute him, in particular. *See Hongsheng Leng*, 528 F.3d at 143; *see also Jian Xing Huang*, 421 F.3d at 129.

Fu also contends that China has a pattern or practice of persecuting individuals who are similarly situated to him, and that this is enough to establish an objective basis for fearing future persecution. Although Fu did not specifically present this argument to the agency, we treat it as exhausted because the BIA addressed (and rejected) it, concluding that it could discern no pattern or practice of persecution of infrequent religious practitioners such as Fu. *See Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 112 n.7 (2d Cir. 2008). The agency reasonably found in addition that the documentary record evidence adduced in this case does not support a finding that, in China, there is a "systemic or pervasive" persecution of similarly situated Christians sufficient to demonstrate a cognizable pattern and practice of persecution. *In re A-M-*, 23 I. & N. Dec. 737, 741 (BIA 2005) (describing a pattern or practice of persecution as the "systemic or pervasive"

5

persecution of a group); *see also* 8 C.F.R. § 1208.13(b)(2)(iii) (setting forth requirements for establishing asylum eligibility); *Santoso v. Holder*, 580 F.3d 110, 112 & n.1 (2d Cir. 2009) (rejecting pattern or practice claim on basis of background materials describing religious persecution as localized rather than countrywide in Indonesia, "a nation state consisting of approximately 6000 inhabited islands"). The articles that Fu submitted to the agency reflect that China's population includes approximately 70 million Christians attending official and unofficial churches. Much of the background record evidence suggests that Chinese authorities target primarily the leadership of particular churches and not general members of Christian congregations.

Additionally, the record shows that the Chinese government's treatment of members of underground churches varies by region. Although in 2009, the police in Fu's home province of Jilin targeted Fu's father, the record contains no documentary evidence regarding the police's treatment of underground church members there, either before or after 2009. In view of the absence of record evidence suggesting pervasive persecution of even regular practitioners in his home region, Fu did not establish a relevant pattern or practice of persecution of individuals who attend church only sporadically. *See Jian Hui Shao v. Mukasey*, 546 F.3d 138, 165–66, 174 (2d Cir. 2008) (finding no error in BIA's requiring

6

localized evidence of persecution in China when record reflected wide variances in population control policies and practices around the country).

We decline Fu's request to consider the 2017 U.S. State Department Religious Freedom Report, because it was not in the record before the agency. *See* 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based."). Even were we to consider it, however, it would not cause us to alter our conclusion because it contains no reference to the treatment of underground Christian church members in Jilin Province. *See Mukasey*, 546 F.3d at 165-66.

In sum, given the lack of evidence of Fu's regular practice of Christianity in the United States, and of proof that any such practice by him would occur, be discovered, and result in persecution upon his return to China, we identify no error in the agency's conclusion that Fu failed to demonstrate the objectively reasonable fear of future harm required to sustain an asylum claim. Fu's failure to carry this burden for his asylum claim necessarily means that he is unable to show the higher likelihood of harm that is required to sustain a claim for withholding and CAT. *See Lecaj v. Holder*, 616 F.3d 111, 119 (2d Cir. 2010).

For the foregoing reasons, the petition for review is DENIED and the previously granted stay is VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court