Lin v. Bondi

BIA
Wright, IJ
A094 926 253

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of October, two thousand twenty-five.

PRESENT:
> DENNY CHIN,
> RAYMOND J. LOHIER, JR.,
> MYRNA PÉREZ,
> *Circuit Judges.*

_____

JIANCHUAN LIN,
> *Petitioner,*

v.                                                              **22-6532**
                                                                **NAC**

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.* \*

_____

---

\* The Clerk of Court is respectfully directed to amend the caption accordingly.

**FOR PETITIONER:**     Jianchuan Lin, pro se, El Monte, CA.

**FOR RESPONDENT:**     Brian Boynton, Principal Deputy Assistant Attorney General; Anthony P. Nicastro, Assistant Director; Matthew B. George, Senior Litigation Counsel; Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Petitioner pro se Jianchuan Lin, a native and citizen of the People's Republic of China, seeks review of a decision of the BIA affirming a decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Chaun Lin*, No. A 094 926 253 (B.I.A. Oct. 26, 2022), *aff'g*, No. A 094 926 253 (Immigr. Ct. N.Y.C. Jan. 24, 2018). We assume the parties' familiarity with the underlying facts and procedural history, which we recite only as necessary to explain our decision.

## BACKGROUND

Lin claims that he fears persecution and torture based on imputed political opinion, because the Chinese government believes that he is a supporter of the

Falun Gong movement, a religious group that the Chinese government considers to be anti-government. *See Gao v. Gonzales*, 424 F.3d 122, 129 (2d Cir. 2005) ("[T]he question in this case is not whether [Petitioner] was or is a practitioner of Falun Gong, but whether authorities would have *perceived* him as such or as a supporter of the movement because of his activities."). In support of his claim, Lin offered testimony and other evidence that Chinese authorities arrested his friend and attempted to arrest him for distributing Falun Gong flyers in 2007 and 2008, and though Lin successfully fled China, authorities continued to look for him.

Among other evidence, Lin submitted: (1) extensive testimony that the IJ found credible, Cert. Admin. Record ("CAR") at 55, 130–64; (2) a written statement describing his near-detention by the authorities, *id.* at 177–81; (3) a letter from his sister corroborating Lin's account and explaining that the authorities continued to look for Lin after he fled in 2008, *id.* at 208–16; (4) a letter from the mother of his friend whom the police did arrest when Lin escaped, describing her son's torture at the hands of the authorities, *id.* at 217–27; (5) a letter from Lin's aunt discussing the incident in which Lin narrowly escaped persecution and his flight from China, *id.* at 422–26; (6) notices posted by (i) the local village committee and (ii) Lin's former employer, which alerted the public that Lin was wanted by the authorities

for his involvement with Falun Gong, *id.* at 200–07; and (7) country conditions reports discussing persecution of Falun Gong adherents in China. *Id.* at 250–383.

The IJ found Lin credible but nonetheless found he had not met his burden to establish a well-founded fear or likelihood of persecution, nor a probability of future torture, because he failed to corroborate certain aspects of his claim on which his testimony was vague. The BIA affirmed and adopted the IJ's reasoning.

## LEGAL STANDARDS

Where, as here, "the BIA briefly affirms the decision of an IJ and adopts the IJ's reasoning in doing so, we review the IJ's and the BIA's decisions together." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006) (internal quotation marks omitted and alteration adopted) (quoting *Secaida-Rosales v. INS*, 331 F.3d 297, 305 (2d Cir. 2003)). We review fact-finding for "substantial evidence" and questions of law and application of law to fact de novo. *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Further, even if the BIA or IJ makes an error of law, we may nonetheless deny the petition "if we are 'confident that the agency would reach the same result upon a reconsideration cleansed of errors.'"

4

*Martinez De Artiga v. Barr*, 961 F.3d 586, 591 (2d Cir. 2020) (quoting *Li Hua Lin v. U.S. Dep't of Justice*, 453 F.3d 99, 107 (2d Cir. 2006)).

Lin concedes that he had not shown past persecution, so he bore the burden to show a well-founded fear of future persecution. 8 U.S.C. § 1158(b)(1)(B); 8 C.F.R. § 1208.13(a), (b)(1). To establish such a well-founded fear of persecution, Lin must show "that he subjectively fears persecution and . . . that his fear is objectively reasonable." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004). A fear is objectively reasonable "even if there is only a slight, though discernible, chance of persecution," *Diallo v. INS*, 232 F.3d 279, 284 (2d Cir. 2000), but is not objectively reasonable if it lacks "solid support in the record" and is "speculative," *Jian Xing Huang v. INS*, 421 F.3d 125, 129 (2d Cir. 2005).

An applicant's testimony "may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). "Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot

5

reasonably obtain the evidence." *Id.* The agency may find an applicant generally credible but still find that his "testimony may not be sufficient to carry the burden of persuading the fact finder of the accuracy . . . of crucial facts if he fails to put forth corroboration that should be readily available." *Wei Sun v. Sessions*, 883 F.3d 23, 28 (2d Cir. 2018). If an IJ denies relief "based on the applicant's failure to provide reasonably obtainable corroborating evidence," "the IJ must (1) point to specific pieces of missing evidence and show that it was reasonably available, (2) give the applicant an opportunity to explain the omission, and (3) assess any explanation given." *Pinel-Gomez v. Garland*, 52 F.4th 523, 529 (2d Cir. 2022) (internal quotation marks omitted) (quoting *Wei Sun*, 883 F.3d at 31).

Finally, because Lin is pro se, his "submissions . . . must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018) (quotation marks omitted).

## DISCUSSION

The IJ made four errors of law that were not corrected by the BIA. While no individual error was necessarily severe enough to require remand on its own, taken together, we cannot be "confident that the agency would reach the same

6

result upon a reconsideration cleansed of errors." *Martinez De Artiga*, 961 F.3d 591. Accordingly, we grant Lin's petition and remand to the agency.

First, the agency "totally overlooked" or "seriously mischaracterized" one of the letters that Lin submitted as evidence and the important facts contained therein, which constitutes an error of law. *See Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009); *accord Garcia Carrera v. Garland*, 117 F.4th 9, 11 (2d Cir. 2024). The IJ dismissed this document as "a letter from someone named Zhang Zung Qiong," and never discussed it further. CAR at 57. In fact, that letter from Zhang Zhongqiong states that it was written by the mother of Lin's friend, Jiang Yong, with whom Lin had been distributing flyers on the day that Jiang was arrested and Lin escaped. *Id.* at 218. That letter describes how Jiang had been detained, tortured for information, and beaten nearly to death, including because Jiang could not give the police information on Lin's whereabouts. *Id.* at 218–19. That letter is highly probative of, among other things, the seriousness of the Chinese government's interest in pursuing Lin, and the risk that if Lin returned to China he would be harmed at a level that rises to persecution, if not torture, based on his association with Falun Gong. The record compellingly indicates that the IJ simply overlooked the importance of this piece of evidence, which constitutes an error of law.

Second, the IJ "totally overlooked" or "seriously mischaracterized" key evidence again when it asserted that Lin had not proven the Chinese government had any interest in pursuing him in part because he "has not indicated that he had any problems leaving [China] back in 2008 using his own" passport. *Id.* at 58–69. That is incorrect. Lin testified that relatives "bribed all the channel on the airport" to get him out of China. *Id.* at 137. Review of the transcript suggests that by the end of the hearing, prior to issuing the oral decision, the IJ had simply forgotten that testimony. *Id.* at 168.[1] Lin's counsel said he believed the IJ was mistaken, but the IJ denied a request to ask Lin the question again. *Id.* The IJ's misunderstanding of the evidence and mistaken belief that Lin was able to leave China without any difficulty was central to the IJ's conclusion that the police were not likely pursuing Lin for his involvement in Falun Gong. This, too, constituted an error of law.

Third, the IJ faulted Lin for failing to offer various forms of corroboration, but the IJ indicated that the most "important[]" piece of missing evidence was "an official arrest warrant from any governmental agency or entity in [China] showing that the officials, in fact, want to arrest him." *Id.* at 58. This was an error of law

---

[1] Lin testified at one point that he had "[n]o . . . problem" leaving China, but it almost immediately became clear that Lin did not understand the question when he gave that answer, and the IJ withdrew it. *Id.* at 164.

because, while this Court "generally defer[s] to the agency's evaluation of the weight to be afforded an applicant's documentary evidence," *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013), we have also recognized that "asylum applicants can not always reasonably be expected to have an authenticated document from an alleged persecutor." *Cao He Lin v. U.S. Dep't of Just.*, 428 F.3d 391, 404 (2d Cir. 2005) (internal quotation marks omitted). The IJ failed to explain why it is reasonable to expect Lin to be able to produce an official government document that ordinarily would not be made public, held by government that Lin says wishes to persecute or torture him. *Cf. Pinel-Gomez*, 52 F.4th at 529 ("[T]he IJ must . . . point to specific pieces of missing evidence and show that it was reasonably available . . . .").

This error was especially stark given that Lin offered extensive evidence to corroborate his claim that the police wanted to arrest him. In addition to the letter from Lin's friend's mother, discussed above, and a letter from Lin's sister detailing police harassment of Lin's family in an effort to find him, Lin also offered what appear to be essentially "Wanted" posters for Lin from his former employer and village committee. CAR at 200–07. The IJ discounted these notices because they were not "authenticated," noting that while each bore some kind of seal, they were not "actually signed by an actual person." *Id.* at 57. It is not clear why that affects

9

their reliability, or why one would expect such documents to be signed by an individual. The IJ went on to speculate, without any apparent factual basis, about whether "the village committees where [Lin] lives are even authorized by such notices." *Id.* at 57–58. In sum, the IJ failed to identify any better evidence of the government's interest in persecuting Lin at the time he fled China that was "reasonably available" to Lin, and any suggestion to the contrary was error.

Fourth, the IJ also placed undue weight on whether Lin himself practiced Falun Gong, which indicates the IJ misunderstood Lin's asylum and withholding-of-removal claims as based only on Lin's religion, rather than imputed political opinion. Where, as here "[t]he IJ certainly was on notice that [Lin] was advancing the theory of imputed political opinion," it was error for the IJ to fail to evaluate that claim and instead to focus on Lin's religious practice. *Gao*, 424 F.3d at 129–30.

As mentioned above, Lin's claim has always been based on imputed political opinion, not religion per se. He claims the government perceives him to be a member of a religious group that the government believes opposes its regime. *See* CAR at 432 (I-589 with boxes checked for "Political opinion," "Membership in a particular social group" and "Torture Convention," but not religion); *id.* at 453 (credible fear assessment finding significant possibility Lin could establish

10

eligibility for asylum or withholding of removal "on account of imputed political opinion"); *id.* at 5 (brief to BIA); *see also Gao*, 424 F.3d at 129 (holding that "imputed political opinion" can constitute a ground of political persecution under the INA); *Rizal v. Gonzales*, 442 F.3d 84, 90 & n.7 (2d Cir. 2006) (suggesting "imputed religion" may also suffice for similar reasons). But much of the factual narrative in the IJ's opinion focuses on whether Lin actually practiced Falun Gong, either in China or the United States. CAR at 52–55. The IJ ignored record evidence of persecution of Falun Gong members, apparently believing it was irrelevant if Lin did not practice Falun Gong himself. And the IJ instead relied heavily on the finding that Lin's testimony was "vague" and thus required corroboration, though the portion of his testimony that was vague pertained to his practice of Falun Gong (or lack thereof) in the United States. *Id.* at 53, 58, 140. Taking all of these issues together, the IJ's "fail[ure] to come to grips with" Lin's theory was legal error. *Gao*, 424 F.3d at 130. The relevant question is not whether Lin "was or is a practitioner of Falun Gong" but "whether authorities would have *perceived* [Lin] . . . as a supporter of the movement because of his activities," and would have persecuted him on that basis. *Id.* at 129. "The IJ failed to analyze whether the evidence supported Gao's theory of imputed political opinion, and must do so on remand." *Id.* at 130.

11

Stripped of those errors, the potential remaining bases for the agency's decision do not permit us to be "confident that the agency would reach the same result upon a reconsideration cleansed of errors.'" *Martinez De Artiga*, 961 F.3d at 591. While Lin's evidence may warrant somewhat diminished weight due to the passage of time between Lin's submission of his application and his hearing date, the government's delay in scheduling that hearing is not itself fatal to Lin's claims. Even assuming a likelihood of persecution or torture diminishes gradually over time, a fear of future persecution is objectively reasonable "even if there is only a slight, though discernible, chance of persecution." *Diallo*, 232 F.3d at 284. Further, we are aware of no rule that put Lin on notice that he must update his application at any particular time after submission, while waiting for a hearing date, to prove that his fear remains well founded.[2] In the absence of such a rule, applicants like Lin are left to guess when once-compelling evidence needs to be refreshed. On remand, the agency may reconsider the evidence, cleansed of the errors addressed above, assigning due weight to any evidence that has become stale, and to any additional evidence that it may receive from Lin through further proceedings.

---

[2] Indeed, if Lin had failed to narrowly escape arrest and had instead stayed in China long enough to be detained and tortured, as his friend was, he would have been able to establish *past* persecution, giving him a presumptively reasonable fear of future persecution, and the burden would have shifted to the government to show "a fundamental change in circumstances." 8 C.F.R. § 1208.13(b)(1)(i), (ii).

\* \* \*

For the foregoing reasons, we conclude the agency erred in denying Lin's asylum claim. Because the agency's denials of withholding of removal and CAT relief were derivative of the erroneous finding that Lin lacked a well-founded fear of future persecution, and this is not a case where there is an "absence of any evidence whatsoever in the record to show that Lin is likely to be tortured if he were returned to China," *Gao*, 424 F.3d at 130, we vacate the BIA's decision in its entirety and remand for reconsideration.

For the foregoing reasons, the petition for review is GRANTED and the case is REMANDED for further proceedings. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

13