Amaya Mejia v. Bondi

BIA
Golovnin, IJ
A216 565 682/683

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of November, two thousand twenty-five.

PRESENT:
>  DENNY CHIN,
>  STEVEN J. MENASHI,
>  BETH ROBINSON,
>      *Circuit Judges.*

_____

BLANCA ESTELA AMAYA MEJIA, LUIS ALEXANDER AMAYA,
>      *Petitioners*,

>  v.                                                          **23-6369**
>                                                              **NAC**

PAMELA BONDI, UNITED STATES ATTORNEY GENERAL,
>      *Respondent*.*

_____

---

\*      The Clerk of the Court is directed to amend the official caption as set forth above.

**FOR PETITIONERS:**          Bruno J. Bembi, Hempstead, NY.

**FOR RESPONDENT:**          Brian Boynton, Principal Deputy Assistant Attorney General; Carl McIntyre, Assistant Director; Justin R. Markel, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioners Blanca Estela Amaya Mejia and her minor son Luis[1] Alexander Amaya, natives and citizens of El Salvador, seek review of an April 5, 2023, decision of the BIA affirming an August 6, 2019, decision of an Immigration Judge ("IJ") denying their applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Blanca Estela Amaya Mejia, Lewis Alexander Amaya*, Nos. A 216 565 682/683 (B.I.A. Apr. 5, 2023), *aff'g* Nos. A 216 565 682/683 (Immig. Ct. N.Y. City Aug. 6, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

---

[1] We refer to the son as "Luis" because, as the petition for review explains, that is the proper spelling of his name. On occasion in the past, he has used the spelling "Lewis."

We have considered the IJ's decision as modified by the BIA, i.e., including only the IJ's findings that the BIA relied on. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005). We review factual findings for substantial evidence and questions of law de novo. *See Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## I. Asylum and Withholding of Removal

An applicant for asylum and withholding of removal has the burden to establish past persecution or at least a well-founded fear of future persecution and that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i); *see* 8 C.F.R. §§ 1208.13(b), 1208.16(b); *Quituizaca v. Garland*, 52 F.4th 103, 105–06 (2d Cir. 2022) (holding that "one central reason" standard applies to both asylum and withholding).

## A. Domestic Violence Claim—Nexus to a Protected Ground

Amaya Mejia alleged sexual and physical abuse by her former partner during their relationship, which lasted ten years and ended in 2008, ten years

3

before she left El Salvador. She alleged that her former partner "demanded [she] follow the rules he made . . . and began to control [her] life," and described a series of violent encounters. She never reported his violence to the police because she believed he would have been detained only temporarily and would have hurt her further upon release. Amaya Mejia asserts that this abuse was on account of her membership in particular social groups of "Salvadoran women who refuse to be controlled as property" and "Salvadoran women who refuse to and do not conform to the rules imposed on them," and because of her political opinion in refusing to assume a gender role.

An applicant who asserts membership in a particular social group as a protected ground must establish that the group is cognizable. *Paloka v. Holder*, 762 F.3d 191, 196 (2d Cir. 2014). A cognizable group is one "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Id.* (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014)); *see also Hernandez-Chacon v. Barr*, 948 F.3d 94, 101 (2d Cir. 2020). Particularity means that the group "must be defined by characteristics that provide a clear benchmark for determining who falls in the group," that is, it cannot be "amorphous, overbroad, diffuse, or

4

subjective." *Paloka*, 762 F.3d at 196 (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 239). Social distinction means that society perceives the existence of a group. *Id.* "In determining particularity and social distinction what matters is whether society as a whole views a group as socially distinct, not the persecutor's perception." *Id.* "Persecutory conduct aimed at a social group cannot alone define the group, which must exist independently of the persecution." *Id.* (quoting *W-G-R-*, 26 I&N Dec. 208, 215 (B.I.A. 2014)).

The agency found that the proposed groups were not cognizable because they were defined by the harm alleged, that is, they did not exist separately from the harm of being controlled and being forced to conform. As the Government argues, Amaya Mejia has not addressed this finding in her brief. Accordingly, she has arguably abandoned review of these social group claims by not addressing the basis for the agency's cognizability finding. *See Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("We consider abandoned any claims not adequately presented in an appellant's brief, and an appellant's failure to make legal or factual arguments constitutes abandonment." (citation modified)).

Even if the argument is not deemed abandoned, the BIA did not err. Contrary to Amaya Mejia's position here, the BIA did not apply the wrong

standard. Indeed, it explicitly stated that it was not relying on decisions the Attorney General had vacated while the appeal was pending and correctly stated that, for a group to be cognizable, it cannot be defined solely by the alleged persecution, and it must "exist independently of the persecution." *See Paloka*, 762 F.3d at 196 (quotation marks omitted). The groups she alleges here do not exist independently of the alleged persecution.

Moreover, Amaya Mejia did not and does not now point to evidence that women who refuse to be controlled or refuse to conform to rules imposed on them are perceived as a distinct group. While she cites evidence that El Salvador has passed legislation and has established specialized courts and police units to address domestic violence and protect its victims, this evidence does not establish that the proposed groups are perceived as distinct by Salvadoran society, and therefore it is insufficient to establish the cognizability of the proposed groups. *See Hernandez-Chacon*, 948 F.3d at 102 (holding that petitioner "failed to provide sufficient evidence that her proposed subset of Salvadoran women was a socially distinct group in Salvadoran society" where "[t]he country conditions evidence addresse[d] widespread violence against women in El Salvador, but . . . [did] not discuss whether women who reject the sexual advances of gang members are

6

perceived as a distinct group in society or are at greater risk than anyone else who refuses to comply with a gang member's demands").

As to political opinion, the record does not reflect that Amaya Mejia's former partner harmed her because of a political opinion. To succeed on a political opinion claim, "an asylum applicant must show that the persecution arises from . . . her own political opinion." *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 (2d Cir. 2005). "[I]t is not sufficient that the persecutor act from 'a generalized political motive.'" *Id.* (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992)). Amaya Mejia asserts that her political opinion was evidenced by her refusal to assume a gender role, and that she was beaten for this refusal. Petitioner's Br. at 26. But she does not expand upon the argument further or specify the gender role that she refused. *See Yueqing Zhang*, 426 F.3d at 545 n.7 (deeming argument abandoned where brief "devote[d] only a single conclusory sentence" to it). In any event, her case is distinguishable from *Hernandez-Chacon*, where we remanded for the BIA to consider more fully whether a woman established a nexus to a political opinion when she resisted an initial rape attempt from a gang member and was attacked by the gang to punish her for that resistance. *See* 948 F.3d at 104 (remanding for the agency to consider whether

7

petitioner's "refusal to acquiesce was – or could be seen as – an expression of political opinion, given the political context of gang violence and the treatment of women in El Salvador"). Amaya Mejia stated that her former partner was friends with gangs, but she did not allege that he was a member. Accordingly, her case lacks the "political context of gang violence," and Amaya Mejia's resistance to her former partner did not take on "a political dimension by transcending mere self-protection." *Id.* at 104 (quoting *Yueqing Zhang*, 426 F.3d at 547–48 ("[O]pposition to endemic corruption or extortion . . . may have a political dimension when it transcends mere self-protection and represents a challenge to the legitimacy or authority of the ruling regime.")).[2]

## B. Gang Based Claim – Objectively Reasonable Future Fear

Amaya Mejia also testified that a gang attempted to recruit her daughter's partners, whom she had dissuaded from joining the gang, and that the gang subsequently visited her house three to five times, threatening her and her son, and demanding that she store drugs and weapons in her home. Although she refused, neither she, her son, nor her daughters were harmed by the gangs. Thus,

---

[2] Amaya Mejia also argues that she is entitled to humanitarian asylum, but that relief is available only to applicants who have shown past persecution on account of a protected ground. *See* 8 C.F.R. § 1208.13(b)(1)(iii).

she did not establish past persecution. *See KC v. Garland*, 108 F.4th 130, 135–37 (2d Cir. 2024) (concluding that threats did not constitute past persecution).

Absent past persecution, Amaya Mejia had the burden to demonstrate a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(2). As the agency concluded, Amaya Mejia's fear is not "objectively reasonable." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004), *superseded in part by statute on other grounds*, 8 U.S.C. § 1158(b)(1)(B)(iii). "Objective reasonableness entails a showing that a reasonable person in the petitioner's circumstances would fear persecution if returned to his native country." *Jian Xing Huang v. U.S. INS*, 421 F.3d 125, 128 (2d Cir. 2005). A fear is not objectively reasonable if it lacks "solid support" in the record and is merely "speculative at best." *Id.* at 129. While the record includes background evidence that gangs have a significant presence in El Salvador, Amaya Mejia has not stated why the gangs would have an ongoing interest in her (now more than seven years since the events of her claim), and her daughters have remained unharmed in El Salvador. *See Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir. 1999) (holding that the absence of evidence of persecution of similarly situated family members "cuts against" finding a fear of future persecution). Contrary to Amaya Mejia's arguments here, because this finding is

9

dispositive of her and her son's fear of gangs, the agency was not required to separately analyze her son's family-based social group claim.

## II. CAT Relief

A CAT applicant "bears the burden of proving the likelihood of future torture by or with the acquiescence of government officials." *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 592 (2d Cir. 2021). An applicant must establish that torture is "more likely than not." 8 C.F.R. § 1208.16(c)(2). Acquiescence "requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Quintanilla-Mejia*, 3 F.4th at 592 (quoting 8 C.F.R. § 1208.18(a)(7)); *Pierre v. Gonzales*, 502 F.3d 109, 119 (2d Cir. 2007) ("A *private* actor's behavior can constitute torture . . . without a government's specific intent to inflict it if a government official is aware of the . . . conduct and intent and acquiesces in violation of the official's duty to intervene.").

The agency held that the Amaya Mejia failed to establish either a likelihood of future torture or that such torture would be by or with the acquiescence of the Salvadoran government. As the Government argues, Amaya Mejia has failed to "meaningfully argue" this claim. She asserts that she merits CAT relief because

10

she was found to be credible, violence is prevalent in El Salvador, and the government is corrupt and colludes with the gangs, but she does not cite record evidence to support these allegations. *See Yueqing Zhang*, 426 F.3d at 545 n.7 (finding claim abandoned where brief "devote[d] only a single conclusory sentence to the argument"). Even if raised, the claim lacks merit.

The domestic violence she suffered is not a basis for CAT relief because she remained unharmed for ten years after the relationship ended and a CAT applicant has the burden to establish the future torture is "more likely than not." 8 C.F.R. § 1208.16(c)(2). As to her fear of gangs, she did not suffer past torture because she was threatened, but not harmed. *See KC*, 108 F.4th at 135–37; *Kyaw Zwar Tun v. U.S. INS*, 445 F.3d 554, 567 (2d Cir. 2006) ("[T]orture requires proof of something more severe than the kind of treatment that would suffice to prove persecution."). And while the record reflects a high level of gang violence, it does not establish, as a CAT claimant must, "that someone in [her] particular alleged circumstances is more likely than not to be tortured," particularly, as noted above, the gang members did not act on their threats and have not harmed her daughters. *Mu Xiang Lin v. U.S. Dep't of Just.*, 432 F.3d 156, 160 (2d Cir. 2005) (emphasis omitted) (quoting *Mu-Xing v. Ashcroft*, 320 F.3d 130, 143-22 (2d Cir. 2003),

11

*superseded in part by statute on other grounds*, 8 U.S.C. § 1252(a)(4)).

For the foregoing reasons, the petition for review is DENIED.   All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court